## Graff, Admr., *v*. Metropolitan Life Insurance Company, Appellant.

202

Argued October 27, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Geoffrey S. Smith,* of *Dechert, Smith & Clark,* with
him *Owen B. Rhoads, Harry Cole Bates,* and *Albert W.
Gilmer,* for appellant.

*Herman P. Abramson,* for appellee.

OPINION BY RHODES, J., January 27, 1938:

On December 9, 1929, defendant issued an industrial life insurance policy to Mary Graff, the insured. It provided for the payment of weekly premiums of 65 cents. The policy had lapsed for nonpayment of premiums in November, 1931. It was revived on March 7, 1932, by a loan in the amount of $14.95. This was never repaid. The policy again lapsed on October 24, 1932, for failure to pay premiums due after September 12, 1932. From September 12, 1932, until October 13, 1933, no premiums were paid on the policy. On October 13, 1933, the insured filed an application for revival of the policy, together with the sum of 65 cents, being amount of weekly premium which the form of application required to be collected therewith. On that date the amount of premiums in arrears and unpaid was $36.40. No additional payment of premiums was made by insured thereafter. She died December 19, 1933. Between the date of the application for revival and the date of the death of the insured, defendant gave no notice to the insured of the acceptance or rejection by it of the application.

On June 15, 1935, plaintiff was appointed administrator of the estate of Mary Graff, deceased. Defendant having refused payment of the face of the policy, suit was instituted. After trial the jury returned a verdict in favor of plaintiff. Defendant's motions for a new trial and for judgment n. o. v. were dismissed, and defendant has appealed from the judgment entered on the verdict.

Appellant contends that the policy was not in force at the time of insured's death, whereas appellee argues that it had been revived by virtue of the application filed on October 13, 1933, and was in force at the time of insured's death.

204

The material portions of the policy are printed in the margin.[1]

The policy provides that "it may be revived, if not more than fifty-two premiums are due." Admittedly, premiums had not been paid for more than 52 weeks prior to the filing of the application for revival on October 13, 1933. Appellee's theory, as we comprehend it, is that there was a sufficient reserve for a premium loan to pay the premiums in arrears, and to revive the policy on payment of the one premium of 65 cents made with the application, and that the policy was revived because appellant never rejected the application, returned the premium of 65 cents, or requested further premium payments prior to insured's death nine weeks later. Neither cash surrender value nor extended insurance is involved.

If the policy had been in force it would have had, on October 30, 1933, a gross reserve value of $50.05.

---

[1] "If any premium under this Policy shall not be paid when due, the Policy shall lapse, subject to the provision for Grace Period and to the Non-Forfeiture Privileges as herein contained, and such lapse shall not be considered to have been waived by the Company in any respect by reason of the acceptance of overdue premiums upon this or any other Policy. ......

"In any settlement under this Policy, any indebtedness to the Company hereunder shall be deducted. ......

"Participation in Surplus. This Policy is a participating contract and, while in force, except when it becomes a Free Policy because of surrender or lapse, shall participate annually in the distribution of the surplus of the Company accruing hereon as ascertained and apportioned. The distribution shall be in such manner as may be determined by the Company with the approval of the Superintendent of Insurance of the State of New York. ......

"Grace Period. A grace of four weeks shall be granted by the payment of every premium after the first, during which time the insurance shall continue in force. If death occur within the days of grace, the overdue premiums shall be deducted from the amount payable hereunder, but neither this concession nor the acceptance of any overdue premium shall create an obligation on the part of the Company to receive premiums which are in arrears over four weeks. ......

No other date of calculation appears in the record. On March 7, 1932, the insured borrowed from appellant the sum of $14.95 to pay the premiums in arrears and to revive the policy. In this connection the policy had endorsed thereon the following: "This policy having Lapsed is hereby Revived Mar. 7, 1932, in consideration of the statements of the applicant in the revival application and upon his agreement that a lien of $14.95 shall be imposed against this policy, which amount, with interest at the rate of six per cent., per annum shall, unless paid in cash, be deducted from any amount payable under this policy or in calculating the cash surrender, paid up or extended insurance values hereunder. W. C. Fletcher."

The interest on this loan amounted to $1.48 to October 30, 1933. On January 1, 1933, after the policy had lapsed, appellant allowed a dividend upon policies in force which would have amounted to $3.25 on the policy in suit if it had been in force on that date. If the loan of $14.95, with interest to October 30, 1933, in the amount of $1.48, was deducted from the reserve of $50.05, the balance would be $33.62. The premiums in arrears October 13, 1933, amounted to $36.40. Allowing the 65 cents premium deposited with application to pay the arrearages to date of application for revival. there would still have been a shortage of at least $2.13 But appellee contends that the loan of $14.95 and interest in the amount of $1.48, or a total of $16.43, should not have been deducted from the gross reserve, and that insured should have been credited with $50.05 toward the payment of premiums without deducting the amount of the previous loan and interest. The court below sustains this position, with which we cannot agree.

It is appellee's position that the prior loan, with

"Revival. Should this Policy become void in consequence of non-payment of premium, it may be revived, if not more than fifty-two premiums are due, upon payment of all arrears and the presentation of evidence satisfactory to the Company of the sound health of the Insured."

interest, aggregating $16.43, could only be deducted from the face amount of the policy when and if payable. This is without merit as the policy was void after non-payment of premiums for fifty-two weeks, and contains no provision for a revival thereafter. Nor does the policy. provide for any loan against reserve for the purpose of paying premiums; the policy contains no mention of reserve value. This being an industrial policy, where the premiums were payable weekly, it was not within the provisions of section 410, art. 4, of the Act of May 17, 1921, P. L. 682 (40 PS §510). The application to revive was the equivalent of an application for a new policy. It was within the discretion of appellant to make a loan on the application of the insured from the reserve value of the policy for the purpose of restoring the policy, and in doing so it could deduct any previous loan made against such reserve value. If appellant were obliged to make loans, as appellee argues, in amounts greater than the policy reserve, for reviving lapsed policies, it would soon be actuarially insolvent. Reserve is created by accumulations from the premiums paid on the policy. It is the amount set aside to eventually meet the policy obligations. Such lapsed policy had a certain reserve value, but no contractual right to a loan therefrom was stipulated in the policy. In the instant case the policy gave no right to insured, after the nonpayment of premiums for fifty-two weeks, to have the policy revived on compliance with certain conditions which might have been waived by implication from failure of appellant to act on the application.

We find no merit in appellee's contention that the policy carried with it a dividend allowed on policies in force on January 1, 1933. At that time the policy in suit was not in force, it having lapsed on October 24, 1932, for the nonpayment of premiums. Insured was not entitled to such credit in calculating the amount of the reserve which may have been available for the purpose

of the loan in order to pay the premiums in arrears. In any event, such dividend would not be available for the purpose of reviving or restoring the lapsed policy. See *Mutual Life Insurance Co. of New York v. Girard Life Insurance, Annuity and Trust Co., Adm'r,* 100 Pa. 172.

Of the reserve of $50.05 there would remain, after deducting $16.43 for previous loan and interest, $33.62. The premiums unpaid on October 13, 1933, amounted to $36.40. Consequently, the reserve on October 30th would not equal, within $2.78, the amount of premiums in arrears on October 13, or within $2.13, after giving credit for the 65 cents deposited with the application.

We are of the opinion that on the facts shown by the evidence the policy was not revived or in force on December 19, 1933, when the insured died, and that the appellee is not entitled to recover. But, assuming that the policy was revived or restored on October 13, 1933, no premiums were paid thereafter by the insured, and over nine weeks elapsed between that date and her death. The policy provided for a grace of four weeks, during which time the insurance remained in force. We fail to find any basis upon which it could be determined that the policy was in force on December 19, 1933, when the insured died.

Judgment is reversed, and here entered for defendant.